UNITED STATES of America, Plaintiff–Appellee,

v.

Mitcheal EDMONSON, Defendant–Appellant.

No. 90–3189.

United States Court of Appeals, Tenth Circuit.

May 6, 1992.

---

John J. Ambrosio, Topeka, Kan., for defendant-appellant.

Kim Martin Fowler, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with her on the brief), Wichita, Kan., for plaintiff-appellee.

Before BALDOCK and BARRETT, Circuit Judges, and DAUGHERTY, District Judge.[*]

DAUGHERTY, District Judge.[*]

The Defendant/Appellant has appealed from his conviction on drug-related charges following a lengthy investigation into drug trafficking activity in Wichita, Kansas. Defendant Edmonson was named, along with four other individuals not parties to this appeal, in three counts of a seven-count indictment returned in July, 1989. Count I charged Edmonson and others with conspiracy to possess cocaine with intent to distribute, Count VI charged Edmonson and others with possession of cocaine with intent to distribute, and Count VII charged Edmonson and others with possession of marijuana with intent to distribute. The case was tried to a jury in February, 1990, and Defendant Edmonson was convicted on all three counts of the indictment in which he was charged. The Defendant's post-trial motions for a new trial and motions for judgment of acquittal were both denied and Edmonson was sentenced in June, 1990 to ten years and one month in a federal correctional institution, with a fine for costs of incarceration and supervised release in the amount of $151,916.05.

On appeal, Edmonson has questioned the propriety of the proceedings before the grand jury; the existence of probable cause concerning the search warrant; the legal sufficiency of the indictment; the decision of the trial court to try Edmonson's codefendant *in absentia;* the decision of the trial court to allow the admission of fingerprint evidence during the trial; the admission during the trial of recorded statements of a codefendant concerning a death from "bad" cocaine; the sufficiency of the evidence; the denial of due process to the Defendant given the cumulative negative effect of errors committed during trial; and the imposition of a fine for costs of incarceration and supervised release under the Federal Sentencing Guidelines. As will be shown, except for the last issue concerning the fine under the Sentencing Guidelines, which has been conceded in Edmonson's favor by the Government, none of the Appellant's contentions has merit and his conviction will be affirmed.

I.

In the district court, Defendant Edmonson attacked the grand jury proceedings by filing a motion to dismiss the indictment, on the grounds that the indictment was

[*] Honorable Fred Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

tainted by the misconduct of government agents before the grand jury. Edmonson argues that such misconduct so prejudiced the grand jury that the grand jury was prevented from exercising independent judgment concerning Edmonson's indictment.

Specifically, Edmonson alleges that the government commented upon the Defendant's refusal to communicate with the officers after he was given his *Miranda* warnings. The government agent stated that when he arrived at Edmonson's cabin on the farm and attempted to question Edmonson about his knowledge of his codefendant's activities, "he mentioned he wasn't going to say anything." Record on Appeal, Document 196, Page 9. Edmonson also claims that during the testimony of the government agent, who was the only witness before the grand jury, that certain inflammatory and irrelevant statements were made which prejudiced the grand jury against all of the Defendants, including Edmonson. Edmonson asserts that those statements were elicited improperly by the prosecutor and were sufficiently damaging to have warranted dismissal of the indictment. Edmonson claims that it was improper for the prosecutor to show the members of the grand jury a photo of the cocaine and marijuana seized at the farm, which also included certain guns seized along with the drugs. In addition, the government agent improperly speculated concerning the source of the cocaine and made comments regarding the drug's purity. Finally, Edmonson asserts that the mention by the agent of a phone conversation in which a codefendant stated that someone had recently died from bad cocaine cumulatively resulted in an overwhelming prejudice against Edmonson and the other Defendants.

■ It is clearly established, and the Appellant acknowledges, that an indictment should not be dismissed for errors in grand jury proceedings unless such errors prejudiced the Defendant. *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988); *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct.

938, 89 L.Ed.2d 50 (1986). When prosecutorial misconduct is charged, an indictment may only be dismissed if it is "shown that such conduct significantly infringed on the ability of the grand jury to exercise independent judgment." *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir.1981). This "presumption of regularity" given to all grand jury proceedings is a difficult burden to overcome and requires very significant misconduct on the part of the prosecutor or other government agents.

■ This Court is persuaded that no such misconduct occurred in this case, certainly no error of the magnitude required to dismiss the indictment as requested by the Appellant. The Government's evidence against the codefendants was more than sufficient to support the indictment even absent the statements that Appellant urges were improper, inflammatory and prejudicial. In any event, "[t]he validity of an indictment is not affected by the type of evidence which is considered by a grand jury, even though inadequate or incompetent." *United States v. Battista*, 646 F.2d 237, 242 (6th Cir.1981), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981), citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The comments alleged by the Appellant to be prejudicial are simply not sufficiently inflammatory to support the Appellant's theory that, absent the improper comments, the indictment would not have been returned. This Court has reviewed the partial transcript of the grand jury hearing submitted by the Appellant in support of his Motion to Dismiss the indictment in the district court, and this Court is persuaded that the district court's refusal to grant the Motion was correct and should be affirmed.

## II.

The Appellant next contends that the trial court erred in overruling his Motion to Suppress the evidence seized pursuant to a search warrant of his property, on the grounds that the search warrant was issued without probable cause. Appellant Edmonson asserts that the affidavit

presented to the district judge did not contain any facts from which the judge could have found probable cause to issue a warrant to search the Edmonson property. The Appellant asserts that there are no factual allegations relating to Edmonson in either the affidavit or the oral testimony, and that the only allegation relating to the Edmonson property is that a codefendant was observed on the evening of one of the arranged buys of cocaine at the Edmonson property. Edmonson claims that there were no allegations that the codefendant was seen removing anything from the Edmonson property or that the codefendant was seen with Edmonson himself. The Appellant contends that the Edmonson property was searched only because the area was "tangentially associated with an individual, Rick Lacey, who was involved in cocaine distribution," Appellant's Brief at 18, and such an association does not amount to probable cause.

This Court has previously stated that the duty of the reviewing court in determining whether probable cause existed for a search warrant "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." The magistrate's determination of probable cause should be given great deference on review. *United States v. Martinez*, 764 F.2d 744, 746 (10th Cir. 1985), quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). In *Gates*, the Supreme Court determined that the "totality of the circumstances" should be considered when determining whether probable cause exists to issue a search warrant. The Court stated that:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238, 103 S.Ct. at 2332.

In applying the test enunciated in *Gates*, this Court has stated that the "affidavit should be considered in a common sense, nontechnical manner...." *United States v. Massey*, 687 F.2d 1348, 1355 (10th Cir. 1982), citing *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir.1979).

In the case at bar, the affidavit stated in part that a confidential source was informed by a codefendant that Lacey was having difficulty retrieving the cocaine due to recent rains because the cocaine was buried. The affidavit also stated that on the date of one of the arranged buys of cocaine, Lacey was seen at Edmonson's residence near Udall, Kansas.

The FBI agent Armand also provided oral testimony in support of the application for the search warrant of Edmonson's property. Agent Armand stated in part as follows:

"Surveillance agents observed Rick Lacey depart his residence and go to a number of locations around the Wichita area. He thereafter drove to the described location near Udall, Kansas, at which time he was observed entering the said location at 7:30 p.m. and departing at approximately 9 p.m. Shortly thereafter, [codefendant] Friesen and Lacey were observed on 127th Street South, meeting together on a dirt road, at which time both were arrested. Following their arrest, approximately five kilos of cocaine were discovered in Friesen's vehicle."

When the above statement by Agent Armand is read in conjunction with the information in the affidavit that Lacey was known to have buried the cocaine, this Court is of the opinion that the magistrate had more than sufficient basis on which to issue the search warrant of Edmonson's property. Given the totality of the circumstances presented to the judge in this case, there was at the very least a "fair probability" that contraband would be found in the area described in the search warrant, as in fact it was. It was proper for the trial court to overrule Edmonson's Motion to Suppress, and such ruling should be affirmed.

## III.

The Appellant's next contention is that the trial court committed error in overruling his Motion to Dismiss the conspiracy count (Count I) of the indictment. The Appellant states that the indictment was fatally defective in that it failed to allege any reasonably ascertainable time period within which the conspiracy occurred, and because the indictment failed to allege an essential element of the crime of conspiracy.

The indictment against the Defendants in this case charges that the Defendants entered into a conspiracy "[f]rom before on or about April 6, 1989 to on or about July 5, 1989." Edmonson asserts that such an open-ended indictment will not support a conviction because the ambiguous language used in Count I does not enable him to comprehend the crime he is accused of committing and prepare an adequate defense. In support of this contention, the Appellant relies on the Ninth Circuit case of *United States v. Cecil*, 608 F.2d 1294 (9th Cir.1979), in which the indictment charged the Defendant with a conspiracy "... beginning on or before July, 1975 and continuing thereafter until on or after October, 1975...." The Ninth Circuit found that the indictment was deficient because it did not adequately state the time frame of the alleged conspiracy. Edmonson acknowledges that while the indictment in *Cecil* was open-ended in both directions, and thus arguably more flawed than that in the instance case, the fact that the Defendant's indictment was uncertain as to a starting date would nonetheless render the indictment at issue in the case at bar insufficient.

The Appellant asserts that the case of *United States v. Mitchell*, 765 F.2d 130 (10th Cir.1985), is inapplicable to the case at bar in that the indictment in the instant case is not susceptible of the construction given to the indictment in *Mitchell*. The Court in *Mitchell* held that the "on or before" language could properly be construed as "on or about", thus correcting the imprecision of the indictment. In the instant case, however, the Appellant asserts that because the indictment already contains the words "on or about," as well as the word "before," the indictment cannot be construed as meaning only "on or about" and thus is fatally defective.

It is well established that:

"[A]n indictment must furnish the Defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the Defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the Court of facts alleged so that it can determine the sufficiency of the charge." *Cecil*, 608 F.2d, at 1296 (9th Cir.1979), citing *Russell v. United States*, 369 U.S. 749, 763, 768 n. 15, 771, 82 S.Ct. 1038 [1046–47, 1050 n. 15], 8 L.Ed.2d 240 (1962).

The indictment must only meet minimal constitutional standards. *United States v. Perkins*, 748 F.2d 1519 (11th Cir.1984). An indictment charging a count of conspiracy is sufficiently precise as to the time frame if the operative period of the conspiracy is set out. In the case at bar, as in the *Mitchell* case, the indictment could properly be construed to mean "on or about" and the word "before" could be deemed superfluous. In any event, the parties agreed to strike the word "before" in the jury instructions and change the beginning date of the conspiracy from April 6th to April 3rd. Thus, there can be little argument that the jury was properly instructed and no prejudice to the Defendant occurred as a result of any ambiguity that the indictment may have originally contained.

The Appellant next contends in regard to the indictment that the conspiracy count failed to allege an essential element of the substantive crime of the conspiracy. This contention is that such count does not set out language that the substantive offense was done "knowingly or intentionally." The Appellant asserts that the crime of conspiracy was referred to only generally and by citation to statutes and that such is insufficient to charge a crime. The Appellant relies on the case of *Nelson v. United*

*States,* 406 F.2d 1136 (10th Cir.1969), in which this Court ruled that an indictment charging conspiracy should be dismissed because the indictment did not allege that the acts were committed "with unlawful and fraudulent intent," an essential element of the substantive crime.

This Court, however, is of the opinion that the result reached in *Nelson* should not be reached in the case at bar and the indictment charging Edmonson with conspiracy should stand. The *Nelson* case, as well as numerous cases from this and other courts, holds that an indictment must be a "competent and forthright attempt to notify the accused of the extent of his alleged culpability." *Nelson,* 406 F.2d, at 1138, citing *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). This holding was affirmed by this Court in *United States v. Stevens,* 612 F.2d 1226 (10th Cir.), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980), in which this Court stated that the indictment in question contained "a substantially accurate statement of the law" and found that such indictment adequately warned the Defendant of the charges. *Stevens,* 612 F.2d, at 1230.

In *United States v. Mobile Materials, Inc.,* 871 F.2d 902 (10th Cir.1989), *cert. denied, Philpot v. U.S.,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990), this Court stated in this connection that when the sufficiency of the indictment is at issue, "the entire document may be considered." *Mobile Materials, Inc.,* 871 F.2d, at 906, citing *United States v. Metropolitan Enter., Inc.,* 728 F.2d 444, 452 (10th Cir.1984). This point was not reached in the *Nelson* case, because *Nelson* involved only a one-count (conspiracy) indictment, and thus obviously all elements of the offense had to be stated in the single count. The holding in *Mobile Materials* is a logical extension of the doctrines enunciated in *Nelson* and *Wong Tai.*

When the indictment at issue in the present case is read and examined as a whole, it is clear that the Appellant was charged with knowingly and intentionally participating in a conspiracy to distribute cocaine. Count I of the indictment states in part that the Defendants, including Mitcheal Edmonson, "did unlawfully combine, conspire and agree together to distribute cocaine ... in violation of 21 U.S.C. § 841(a)(1)...." One of two other counts in the indictment in which Defendant Edmonson was charged, Count VI, was the substantive count in the conspiracy count. It states that Edmonson "did unlawfully, knowingly and intentionally possess with intent to distribute approximately ten kilograms of cocaine ... in violation of 21 U.S.C. § 841(a)(1)." The same wording appears in Count VII, except that count charges that Defendant Edmonson "did unlawfully, knowingly and intentionally possess with intent to distribute" marijuana rather than cocaine. Section 841(a)(1) of Title 21 is named in all three counts against Defendant Edmonson and the essential elements of that crime are spelled out twice in counts against Defendant Edmonson.

As a result, when the three counts against Defendant Edmonson are read together, all of the essential elements of § 841(a)(1) are stated in the indictment. Thus, the Appellant was adequately informed by the indictment of each of the charges against him, including the conspiracy count, and no prejudice to the Appellant resulted from any alleged deficiencies in Count I of the indictment. "A normal reading of the charges involved in the instance case" conveys to the Appellant a clear understanding of each of the charges against him, including Count I. *Stevens,* 612 F.2d at 1230.

In addition, the Defendant did not move to dismiss Count I of the indictment until just before the close of the Government's evidence. It has been held that, while failure of an indictment to state an offense is a fundamental defect which can be raised at any time, "the very limited resources of our judicial system require that such challenges be made at the earliest possible moment in order to avoid needless waste. Consequently, although such defects are never waived, indictments which are tardily challenged are liberally construed in favor of validity." *United*

*States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976). *In accord, U.S. v. Freeman,* 813 F.2d 303 (10th Cir.1987). While such a determination is not necessary to this Court's decision concerning the validity of the indictment because we are of the opinion that the indictment was not fatally defective on its face, the fact that the Appellant's challenge to the indictment was not raised until well into the trial does require that the indictment be examined more liberally by this Court, and that the presumption of validity in favor of the indictment is stronger.

■■■ It is worth repeating that convictions should not be reversed for minor technical irregularities that do not prejudice the accused. *Russell,* 369 U.S. at 763, 82 S.Ct. at 1047. We find that the above premise should apply in this case, and the district court's decision to overrule Defendant Edmonson's Motion to Dismiss the conspiracy count in the indictment should be affirmed.

### IV.

Edmonson urges that he was denied his right to a fair trial by the trial court's decision to proceed with the trial of Defendant Lacey *in absentia* and by the trial court's failure to grant Edmonson's Motion to Sever his trial from that of the absent Defendant. Defendant Edmonson first argues that the trial of Lacey *in absentia* violates Rule 43 of the Federal Rules of Criminal Procedure. The Appellant argues that that rule mandates the presence of a Defendant "at every stage of the trial ... except as otherwise provided by this rule." Edmonson further asserts that the absence of codefendant Lacey was not permissible under either of the exceptions to Rule 43. The Appellant also asserts that although Rule 43(b) states that the continued presence of a Defendant is not required at trial and may be waived, the rule provides that the Defendant must be "initially present" and such requirement was not complied with in the instant case.

It is the position of the Defendant Edmonson that he suffered prejudice from the *in absentia* trial of codefendant Lacey and was thus deprived of his right to a fair

trial. Edmonson urges that there was an adverse psychological impact on the jury as a result of the "dehumanizing of the absent defendant." Appellant's Brief, at 29. Appellant Edmonson asserts that in order to avoid the above-mentioned adverse psychological impact, his Motion for Severance should have been granted by the trial court.

■■■ In addressing the Appellant's contention that Rule 43 of the Federal Rules of Criminal Procedure mandates the Defendant's presence at trial except in certain limited situations, this Court is of the opinion that a Defendant's presence at trial may be waived by his absence and that codefendant Lacey did in fact waive that right. *U.S. v. Wright,* 932 F.2d 868 (10th Cir.1991).

In *Wright,* one of the codefendants (Kirby) failed to appear for the proceedings and was tried *in absentia.* Kirby asserted that his Sixth Amendment rights were violated as a result of his trial *in absentia,* and urged that his conviction be reversed on that ground. This Court held unequivocally that "an accused has a Sixth Amendment right to be present in the courtroom at every stage of her or his trial, unless the right is waived, *Diaz v. United States,* 223 U.S. 442, 445, 32 S.Ct. 250, 253, 56 L.Ed. 500 (1912), ... Absence without compelling justification constitutes a waiver of the right to be present at trial...." *Wright,* 932 F.2d at 879, citing *United States v. Peterson,* 524 F.2d 167, 184 (4th Cir.1975), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976).

■■■ This Court relied in *Wright* on Rule 43 of the Federal Rules of Criminal Procedure for the proposition that a Defendant's presence is not required if he or she "voluntarily absents [herself or] himself after the trial has commenced." There is no indication in the *Wright* case that Defendant Kirby was present for any stages of the trial. A footnote to the case states only that Defendant Kirby did not show up for the trial and was tried *in absentia.* Thus, obviously the fact that Kirby was not present at the initial stages of the trial did

not preclude this Court from holding that he had nonetheless waived his constitutional right to be present during the proceedings. The same conclusion should be reached in the case at bar. The fact that codefendant Lacey was not present for any of the trial would not preclude the trial court from finding that he had waived his right to be present and trying him *in absentia* if other factors weighed in favor of such decision.[1]

 As the *Wright* case instructs, the Sixth Amendment right to be present at trial cannot "cursorily, and without inquiry, be deemed by the trial court to have been waived simply because the accused is not present when he should have been." *Wright*, 932 F.2d at 879, quoting *United States v. Beltran–Nunez*, 716 F.2d 287, 291 (5th Cir.1983). Nonetheless, a trial court's decision to proceed with the trial against a defendant *in absentia* is clearly within the trial court's discretion, and should be reversed by this Court only if an abuse thereof is found. In the case at bar, the trial court inquired of Defendant Lacey's counsel at the commencement of the trial as to Lacey's absence, and recessed the trial until that afternoon to allow the attorney an opportunity to contact Defendant Lacey. When the Court reconvened in the afternoon, the Court again inquired as to the presence of Defendant Lacey, and had the Marshals check the courthouse to see if Lacey were present. As a result, this Court finds that the trial court took adequate steps to ensure that Defendant Lacey had in fact waived his right to be present at trial and was not absent due to a miscommunication or other such reason.

The trial court then determined that the trial should proceed in Defendant Lacey's absence. The *Wright* case states that a trial court "should consider factors such as the likelihood that the trial could soon proceed with the Defendant present, the diffi-

culty of rescheduling and the burden on the Government, *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir.1988), *cert. denied*, 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988), ... Generally, the balance will favor proceeding without the defendant only in multidefendant trials." *Wright*, 932 F.2d at 879.

 The trial court in this case fully considered the above-cited factors and stated in his memorandum and order as follows:

"This is a multi-defendant trial. There is no evidence of any likelihood that the trial could soon take place with the Defendant present ... The Court finds that it would be an extreme burden upon the government to undertake two trials if Defendant Lacey is subsequently apprehended and the case would then need to go to trial against him. The parties have represented to the Court that this case will take at least four weeks ... Defendant Lacey is charged with conspiracy to distribute cocaine along with the other named defendants ... Most if not all of the evidence against Defendant Lacey will overlap with the evidence against the other defendants. Furthermore, the Court finds that it would be extremely difficult to reschedule this four-week trial, not only for the parties but for the Court ... Further delay is not mandated by Defendant's unjustifiable and voluntary absence from trial."

This Court is in agreement with the district court that the case at bar is clearly one in which a trial of an absent codefendant *in absentia* was appropriate. There were five codefendants in this case, and the evidence against those defendants was extensive and overlapping. As a result, it would be an unfair burden on the government to have to conduct two separate trials. The district court properly determined that a trial of Defendant Lacey *in absentia*

---

**1.** In connection with this proposition, the Government urges that only Defendant Lacey, the Defendant who was actually tried *in absentia*, has standing to raise a violation of Rule 43. The Government asserts that Defendant Edmonson is impermissibly seeking to assert the rights of Defendant Lacey in this regard. Because

Defendant Edmonson is taking the position that his own entitlement to a fair trial was denied by the adverse psychological effect of codefendant Lacey's absence, this Court does not agree with the Government that Defendant Edmonson does not have standing in this case to raise the *in absentia* issue.

was the appropriate course of action in this case.

■ Defendant Edmonson next argues that he suffered such prejudice from the negative psychological impact of the *in absentia* trial of codefendant Lacey that he was deprived of his Sixth Amendment right to a fair trial. Edmonson urges that the jury would in effect punish Edmonson, who was shown at trial to have been the absent codefendant Lacey's high school friend, for Defendant Lacey's absence. As the Appellee points out, however, the jury in this case was obviously able to separate the evidence as to each codefendant and judge each codefendant on his or her own case as reflected in the verdicts. Of the four codefendants actually tried in this case (one codefendant, Mary Friesen, pled guilty), two of the codefendants were acquitted by the jury. It simply cannot be said that the absence of codefendant Lacey had a significant negative impact upon the trial for the remaining Defendants, including Appellant Edmonson.

■ The Appellant's last point in this area is that he should have been granted a severance of his case from that of Defendant Lacey to avoid the adverse effects of Lacey's absence on Edmonson's case. The decision to sever defendants for trial is within the discretion of the trial court and thus is reviewable by this Court only for abuse of that discretion. *U.S. v. Esch*, 832 F.2d 531, 537 (10th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988); *U.S. v. Cresta*, 825 F.2d 538 (1st Cir.1987). This Court has previously stated that the trial court "must weigh any potential prejudice against the important considerations of economy and expedition in judicial administration." *Esch*, 832 F.2d at 537, citing *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied*, 477 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

■ Because this Court has determined above that the absence of Defendant Lacey did not have a significant adverse impact upon the case, it would obviously be unnecessary for the trial judge to grant a severance. In the case at bar, it is clear that any possible potential prejudice is vastly outweighed in this case by the above-discussed hardship to the Government in having to conduct two separate trials, given the overlapping nature of the evidence in this case. Accordingly, this Court determines that the trial court was correct in refusing to sever Defendant Lacey's trial from that of the other codefendants and its denial of Appellant's Motion to Sever should be affirmed.

## V.

Appellant Edmonson next argues that the trial court erred in allowing evidence of Edmonson's fingerprints on a bag of buried marijuana to be admitted during the trial. Edmonson asserts that he had not been advised of the existence of the fingerprint evidence prior to trial and, to his detriment, his counsel had relied heavily on the absence of fingerprint evidence in his opening statements and much of his cross-examination.

The fingerprint evidence at issue, a lab report indicating that a fingerprint found on one of the buried plastic bags containing marijuana appeared to match Edmonson's fingerprint, was presented by the Government in the middle of the trial. The fingerprint tests were apparently conducted by the FBI on March 9, 1989, which was approximately a month after the commencement of the trial. Edmonson's counsel objected to the admission of evidence from this comparison and moved for a mistrial. Edmonson's counsel also moved for a 45-day continuance in order to reevaluate his case and adjust trial strategy, which motion was denied. As a result, Edmonson contends that the admission of the "surprise" fingerprint evidence resulted in unfair prejudice to him. Edmonson asserts that the Government's failure to perform all fingerprint tests prior to trial was in violation of Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure,[2] on the

2. Rule 16(a)(1)(D) reads as follows:

"Upon request of the defendant, the government shall permit the defendant to inspect

grounds that the Defendant Edmonson's fingerprints would have been discovered earlier had the Government exercised the requisite "due diligence."

■■■■■ The Government responds, and this Court agrees, that Rule 16 does not require that all scientific testing be conducted prior to the trial. This Court has held that Rule 16 requires only that the Government disclose promptly any additional discovered evidence. Rule 16(c), Federal Rules of Criminal Procedure; *United States v. Bowers*, 593 F.2d 376, 379 (10th Cir.1979), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979). The Government asserts, and the Defendant has presented no evidence to dispute this assertion, that Defendant Edmonson's counsel was notified promptly about the discovery of Edmonson's fingerprints on the buried plastic bag of marijuana. There simply has been nothing presented to this Court that would indicate any impropriety in this area on the part of the Government. Edmonson has presented no evidence that the Government knew of Edmonson's fingerprint evidence and deliberately withheld such evidence. This is not a case of "trial by ambush." *United States v. Kelly*, 420 F.2d 26, 29 (2nd Cir.1969).

■■■■ The Appellant argues that he was unfairly surprised by the new fingerprint evidence because the heart of his counsel's argument was that the Government did not have any concrete evidence directly associating Edmonson with the seized drugs. However, it has been held that:

"[T]he mere fact that the defendant was surprised by the evidence does not mandate that the evidence be excluded ... [T]here is no rule that evidence must be excluded or mistrial granted on the basis that a defendant had committed himself to a theory which was undermined by new evidence ... There is *always* a possibility that new evidence will be discovered, even if the defense was structured

around assurances made by the government. This may be particularly so when the indictment charges a conspiracy." *United States v. Atisha*, 804 F.2d 920, 925 (6th Cir.1986).

It is undisputed that evidentiary rulings of a trial court are within that court's discretion, *United States v. Cooper*, 733 F.2d 1360 (10th Cir.1984), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984), and this Court has been presented with nothing that would indicate that the trial court abused his discretion in admitting the fingerprint evidence of Defendant Edmonson.

Edmonson also argues that, because of the nature of the newly discovery evidence, the trial court should have granted his requested 45–day continuance in order that Edmonson might secure additional expert witnesses to examine the fingerprint results and readjust his defense strategy. The trial court denied Edmonson's requested continuance, but ruled that the Government could not introduce the new fingerprint evidence until seven days after the Defendant had received the photograph of the latent prints. It is the position of the Government that such order allowed the Defendant sufficient time to conduct his own independent tests and adequately cross-examine any Government witnesses.

■■■■ The trial court has broad discretion in determining whether or not to grant a continuance. *United States v. Tamura*, 694 F.2d 591 (9th Cir.1982); *United States v. White*, 846 F.2d 678 (11th Cir. 1988). This Court is not willing to say that the trial court's decision to delay the introduction of the new fingerprint evidence for seven days was unreasonable, or an abuse of that discretion. The trial judge is in the best position to evaluate the effect of such new evidence and determine the appropriate course of action. The trial court's deni-

and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial."

al of Edmonson's request for a continuance should be affirmed.

## VI.

██ Edmonson next contends on appeal that the trial court erred in admitting tape-recorded statements of a codefendant. In the conversation at issue, codefendant Mary Friesen and the confidential source discussed the fact that someone had died from "bad" cocaine. Friesen states in part, "[codefendant] Lacey ain't never sold anything anybody ever died from...." The Appellant urges that such conversation should not have been admitted in that it was unfairly prejudicial and could have served no purpose but to inflame the jury.[3]

As has been stated, the review by an appellate court of a trial court's decision concerning the admissibility of evidence is to determine only whether the trial court abused its discretion in the admission of that evidence. *United States v. Sullivan,* 919 F.2d 1403 (10th Cir.1990). The trial court in this case did not abuse its discretion in admitting the tape-recorded conversation. The conversation contained a clear statement concerning a codefendant's cocaine sales. This Court is in agreement with the Appellee that the tape recording indicates the codefendant's intent to continue the distribution of cocaine and delineates the various individuals' participation in the scheme. The probative value of this statement outweighs the potential prejudice because Defendant Friesen specifically did not implicate codefendant Lacey in any deaths from "bad" cocaine.

██ We do not accept the Appellant's assertion that the mere mention of "bad" cocaine is sufficiently inflammatory to warrant exclusion of what appears to be a highly incriminating and relevant tape re-

cording. While the discussion regarding bad cocaine may have had some unfair prejudice, "the discussion could not, in any light, be deemed to have created *substantial* unfair prejudice." *U.S. v. Currier,* 836 F.2d 11, 18 (1st Cir.1987). Defendant Edmonson is not entitled to a new trial or a reversal of his conviction on this basis, and the trial court's decision to admit the tape-recorded conversation should be affirmed.

## VII.

Appellant Edmonson urges that the evidence is insufficient to support the jury's verdict of guilty. Appellant acknowledges that the evidence must be examined "in the light most favorable to the government to determine whether any rational trier of fact could find [the Defendant] guilty beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Appellant nonetheless argues that the evidence against him is "meager, circumstantial, surveillance evidence" that does not connect him to the conspiracy beyond a reasonable doubt. Appellant's Brief at 44. The majority of Edmonson's argument on this issue presumes that this Court determines that the search warrant was illegally obtained and that the surprise fingerprint evidence should be excluded. Nonetheless, Edmonson argues that, even if this Court affirms the trial court on those issues, as we have done, the fingerprint evidence is still insufficient to allow the jury to determine Edmonson's involvement in the conspiracy beyond a reasonable doubt. We find this argument to be strained at best.

██ In evaluating the sufficiency of the evidence presented against the Defendant, it has been stated that "[t]he evidence may be sufficient even though it does not 'ex-

---

**3.** The Defendant's objections were based on Rules 403 and 404(b) of the Federal Rules of Evidence. Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Rule 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to show the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

clude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion of guilt' ... A jury is free to choose among reasonable constructions of evidence." *United States v. Perkins*, 748 F.2d 1519, 1526 (11th Cir.1984), citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The evaluation of evidence regarding the existence of a conspiracy has been described as follows:

> "While mere presence or association with others involved in a criminal scheme is not sufficient to prove participation in a conspiracy, the essential elements of a conspiracy can be proved by inference from the actions of the parties or by circumstantial evidence. Direct evidence of an agreement to join a criminal conspiracy is rare, so a defendant's assent can be inferred from acts furthering the conspiracy's purpose. The government is not required to prove that each alleged conspirator knew all the details of the conspiracy; it is enough to establish that a defendant knew the essentials of the conspiracy."
>
> *Perkins*, 748 F.2d at 1527, citing *United States v. Mulherin*, 710 F.2d 731, 738 (11th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984).

In the case at bar, especially in light of the fact that this Court has determined that the search warrant was not illegally obtained and that the evidence of Edmonson's fingerprint on one of the buried bags of marijuana should be admitted, this Court does not think it can be seriously argued that the evidence is insufficient to support Edmonson's guilt beyond a reasonable doubt. When the evidence is considered as a whole, we find that the jury could reasonably find that Edmonson was a part of the conspiracy under the standards set forth above, and reversal of his conviction is not required.

### VIII.

The Defendant urges that he was denied a fair trial as the result of the cumulative effects of alleged trial errors. Because this Court has determined that the trial court did not commit the errors asserted by the Defendant, there can obviously be no cumulative effect and no denial of due process as a result of that cumulative effect. The Defendant received a fair trial in this case and his conviction should be affirmed.

### IX.

The final issue on appeal is whether the sentencing court erred in imposing costs of incarceration and supervised release under § 5E1.2(i) of the Federal Sentencing Guidelines. In the case of *United States v. Labat*, 915 F.2d 603 (10th Cir. 1990), this Court held that " 'an additional fine' under § 5E1.2(i) cannot be imposed unless the Court first imposes a punitive fine under § 5E1.2 (a)." In its response, the Government recognizes that *United States v. Labat* is controlling precedent on this issue. It is undisputed that the trial court did not order a punitive fine under § 5E1.2(a), and thus the Defendant's fine must be and is hereby vacated.

**AFFIRMED WITH FINE VACATED.**